Argued March 1, affirmed March 16, rehearing denied April 6, 1915.

# BARNUM *v.* LOCKHART.*

(146 Pac. 975.)

**Vendor and Purchaser—Marketable Title—Omission of Closing Call in Deed in Plaintiff's Chain of Title.**

1. Where a deed, in plaintiff's chain of title, conveying a rectangular piece of land, gave three sides and the number of acres in the tract, but omitted the closing call, the defect was not such as to render plaintiff's title unmarketable.

**Vendor and Purchaser—Marketable Title—Encumbrance.**

2. Under Section 7140, L. O. L., providing that the owner or holder of record may satisfy or release a mortgage, and under Section 7138, L. O. L., providing that the certificate of release shall specify "that such mortgage has been paid or otherwise satisfied or discharged," a release under seal of a mortgage on plaintiff's land did not fail to render plaintiff's title marketable as free of encumbrance because given without consideration in fact.

**Vendor and Purchaser—Marketable Title—Encumbrance.**

3. The existence of an open, notorious and visible physical encumbrance upon land contracted to be conveyed, such as a railroad in operation, is not an encumbrance which renders the owner's title unmarketable.

  [As to what is marketable title, see note in 132 Am. St. Rep. 992.]

**Vendor and Purchaser—Remedies of Vendor—Actions for Purchase Money—Pleading.**

4. In an action on a contract for the sale of land, defendant's contention that plaintiff's suit was premature, and that his right of action was dependent upon his furnishing a perfect abstract of title, was matter that should have been pleaded in abatement.

---

*As to what constitutes a "satisfactory" title within contract employing that term, see note in 18 L. R. A. (N. S.) 741.

The authorities on the question what is a marketable title, are gathered in an extensive note in 38 L. R. A. (N. S.) 3.    REPORTER.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE McBRIDE.

This is an action by Guy C. Barnum against Herbert Lockhart to recover installments alleged to be due upon a contract to purchase real estate.

The complaint alleged that on August 14, 1911, the plaintiff and defendant entered into a contract whereby plaintiff agreed to sell and convey to defendant a tract of land, described in the complaint, for the sum of $20,000, to be paid in installments as follows: $1,000 to be paid at the execution of the contract; $1,000 within 90 days; $8,000 within six months; $5,000 on or before August 14, 1912; and $5,000 on or before August 14, 1913 with 6 per cent interest on deferred payments from date of maturity.    There was also a provision for attorney's fees in case of nonperformance by either party.    It was further alleged that plaintiff "is ready, able and willing to fulfill all the terms of said agreement on his part to be kept and performed in full conformity therewith"; that defendant has paid nothing except the first two payments of $1,000 each.    Defendant answered, admitting that he entered into the agreement, but denying plaintiff's willingness or ability to perform his part of the contract, and set up the contract in full as an exhibit to the complaint.    That part of the contract material to this controversy is as follows:

"Know all men by these presents, that Guy C. Barnum and ——, his wife, the first parties, in consideration of the sum of one thousand ($1,000) dollars cash in hand paid, and in consideration of the payments to be made by Herbert Lockhart as hereinafter stated, do hereby agree to sell and convey unto the said Herbert Lockhart of Marshfield, Oregon, the following described real property, situated in Coos County, Oregon,

75 Or.—34

to wit: Beginning at the southwest corner of northwest quarter of southeast quarter of section 11, township 26 south, of range 13 west, Willamette meridian, in Coos County, Oregon, thence north 20 chains; east 20 chains; thence south 46 degrees east to low-water line on left bank of Isthmus Slough; thence southwesterly along low-water line to a point due east of place of beginning; thence west to place of beginning containing 61.6 acres more or less; said premises being and including all of what is known as Port Barnum and fronting on Isthmus Slough, Coos County, Oregon, near Flagstaff in said county; and including all streets, alleys and other public highways shown on said map. (The plat of said Port Barnum having been heretofore vacated by order of the County Court of the State of Oregon for Coos County.) The said Guy C. Barnum does also hereby agree to furnish within thirty days from this date an abstract of title to said premises showing marketable title in himself, and to allow the said Herbert Lockhart a reasonable time in which to examine the said abstract of title. * * In case the second party, his legal representatives or assigns, shall pay the several sums of money aforesaid punctually, and at the several times above specified; and strictly and literally perform all and singular the agreements and stipulations aforesaid, according to the true intent and tenor thereof, then the said first party will make unto the second party, his heirs or assigns, upon request at Flanagan & Bennett Bank, Marshfield, Oregon, and upon the surrender of this agreement, a deed conveying in fee simple, with the ordinary covenants of warranty; excepting, however, from the operation and subject matter of said covenants the before-mentioned taxes and assessments and all liens and encumbrances created or imposed by said second party or his heirs. But in case the said second party shall fail to make the payments aforesaid, or any of them, punctually and upon the strict terms and at the times specified, without failure or default, the time of payment being declared to be of the essence of this agreement, then the first party shall have the right to declare this agreement null and void; and in such case, all the rights and

interests hereby created or then existing in favor of said second party, or derived under this agreement, shall utterly cease and determine, and the premises aforesaid shall revert in said first party, without any right of the said second party of reclamation or compensation for money paid or improvements made, as absolutely, fully, and perfectly as though this agreement had never been made.''

The answer further alleged:

"That said Guy C. Barnum is wholly in default as to the terms and provisions of said contract on his part to be performed in this: That said Barnum has failed to furnish an abstract of title to said premises showing a marketable title in himself. That said Barnum did furnish an abstract, but the same did not show a marketable title in said Guy C. Barnum for the following reasons: (a) Page 27 of the abstract of title prepared by the Title Guarantee & Abstract Company for plaintiff, dated August 28, 1911, No. 1760, shows a deed from certain persons claiming to be the heirs of Malinda Davis, deceased. That said deed is defective inasmuch as the interest attempted to be described therein was deeded to one Malinda Davis, and, secondly, the description in said deed according to said abstract is defective inasmuch as it appears therefrom that the closing call of the description is not given, the description in said deed being as follows: 'The undivided one-twelfth interest in all the following described lands: Beginning at the southwest corner of the northwest quarter of the southeast quarter of section 11, township 26 south of range 13 west of Willamette meridian running thence north 20 chains; thence east 20 chains; thence south 46 degrees east to low-water line of Isthmus Slough; thence in a southerly direction along low-water line of said Isthmus Slough to a point due east of the place of beginning, and containing 61 acres in Coos County, Oregon, conveying all interest of, in, or to the described lands inherited by the grantors from Malinda Davis, deceased, and the grantor T. J. Davis conveying and intending to convey his right

to the curtesy in the described lands.' (b) That page 18 of said abstract shows an agreement between T. J. Davis and wife and other persons, who as owners of said real property agreed to give and convey to Coos Bay Roseburg Eastern Railway & Navigation Company, a corporation of Oregon, a right of way 100 feet wide through and across said lands, which agreement appears to be recorded on page 377 of volume 21 of said records of deeds. That said railroad company now occupies and claims said right of way as owner thereof. (c) That page 49 of said abstract shows a mortgage from plaintiff to one Henry Sengstacken, recorded as of May 9, 1910, on page 386 of volume 25 of Records of Mortgages of Coos County, Oregon, purporting to secure the payment of a note for $8,750, due on or before three years from May 14, 1910, drawing interest at rate of 6 per cent per annum. That in a continuation or additional abstract prepared by said company, dated April 3, 1913, there appears what purports to be an attempted partial release of said mortgage. That said release is executed by Henry Sengstacken. That no consideration is expressed therein, and therefore, as defendant is advised and believes and therefore alleges, said partial release is defective and not a binding or valid release. That the defendant also alleges that he is informed and believes, and therefore alleges, that at the time of the execution and delivery of said partial release said Henry Sengstacken was not the owner of the mortgage referred to in said partial release, nor of the note thereby secured. * * And defendant further alleges that at all times since the making of said contract and at the present time he has been and now is ready, willing and able to fulfill the terms and provisions of said contract on his part to be paid, kept, or performed. That on February 9, 1912, defendant did tender and offer to pay to plaintiff the installment of $8,000 due on or before six months from date of said contract, and which tender is in writing, and a copy of said tender is hereunto annexed, made a part hereof, and marked 'Exhibit B.' * * That defendant on the 6th day of April, 1912, did also tender and offer to pay

to plaintiff the sum of $5,000 due on or before August 14, 1912. That a copy of said tender is hereunto annexed, made a part hereof, and marked 'Exhibit C.' * * That at the time of making each of said tenders and at all times since, the plaintiff has not been and is not now able to comply with the terms of his contract, and has failed and neglected to comply with the terms of his contract as hereinbefore stated, and the title to said real property is shown by the abstracts submitted to defendant have not shown a marketable title in said Guy C. Barnum. That at the time of the making of said tenders there were two unpaid unsatisfied mortgages against said real property aggregating $10,750, besides interest, and of which was the mortgage to Henry Sengstacken for said sum of $8,750 from which said lands were attempted to be released as aforesaid, and the other for $2,000 in favor of First Trust & Savings Bank of Coos Bay, recorded as of April 13, 1910, on page 316 of volume 25 of Record of Mortgages of said Coos County. That the last-mentioned mortgage has been paid, satisfied, and discharged."

The reply, among other things, admits that the abstract showed a contract between plaintiff's predecessors in interest and the Coos Bay Roseburg Eastern Railway & Navigation Company to a right of way 100 feet wide across the contracted lands, and that the railroad company now occupies and claims it, and sets up the following facts as an estoppel:

"Admits the allegations contained in subparagraph lettered 'b' on page 3 of said answer, commencing with the fourth line of said page, and extending to and including the eleventh line thereof, and alleges that the defendant and plaintiff were both familiar with the land in question, with the location thereof, and knew and understood that the above right of way of said railway extended through the same; that said right of way had been long occupied by the tracks of said railway company, and said railway at the time of the making of the contract herein set forth was and had been

in continuous operation for many years, and that it was in contemplation of the parties at the time of making said contract that the said railway should continue to operate, and that said right of way across the same should be held and retained by the said railway company for the purpose of operating the same as long as the said railway company should choose so to do, and defendant and plaintiff both entered into said contract with a full understanding that said railway company should continue to hold said right of way, and continue to operate said railway across the same, and that the plaintiff could not and would not release the said land from such easement and right of way, and that the plaintiff was not expected or required so to do under the terms of said contract; * * that an abstract of title as required by said contract was duly furnished by the plaintiff to the defendant, and that the abstract so first prepared and presented by the plaintiff to the defendant was examined by the defendant and his attorneys, and was returned to the plaintiff with a letter from the defendant setting forth his objections thereto and to the title as shown thereby, which said letter was dated September 22, 1911, and is noted and referred to in the letters and tenders of payment made by the defendant to plaintiff set up in his answer herein as 'Exhibit B' and 'Exhibit C,' respectively; * * that neither the existence of the said right of way nor the claim or occupance of said railway thereunder were set out or mentioned in said letter returning said abstract, nor were any of the pretended defects in said title of the plaintiff, or in said abstract as attempted to be set forth in said answer of defendant herein, referred to or in any manner mentioned or set out in said letter so returning said abstract, or in said tenders; * * that each and all of the defects and of the pretended defects in plaintiff's title to said land set up in the answer herein, and the records and facts upon which said defects and pretended defects are based, appear and were set out in the said abstract so first furnished by the plaintiff to the defendant, and the plaintiff, relying upon the tenders and letters and statements of the de-

fendant, and upon the statements of defects and objections therein contained, and relying upon the representations thereby made that said objections so raised by the defendant were the only objections to said title or said abstract found or raised by the defendant, or that would be set up, claimed or relied upon by the defendant, and that all defects other than these mentioned were thereby waived, thereafter at great effort, trouble and expense procured the curing and removal of said defects then objected to by defendant, and the correction and continuation of said abstract so as to properly show said corrected title; * * that all of the defects and pretended defects of said title and in said abstract set forth or mentioned in any manner in said letter of the defendant to plaintiff, or in any wise referred to in said several tenders, had been fully cured and removed by the plaintiff, and abstracts showing a marketable title, free and clear of all said defects and pretended defects mentioned or objected to by the defendant, were duly tendered by plaintiff to defendant before the commencement of this action, and said corrected and extended abstracts were received and accepted and retained by the said defendant, and still are in his possession; * * that by making said specific objections and none other, and by making said written tenders referring to said objections and none other, the defendant waived any and all other defects, pretended defects or objections to said title, and to said abstracts, and is estopped to now set up any of the objections alleged in his said answer, or any objections other than those specifically set forth by him in his said letter of September 22, 1911, and referred to in the said written tenders to him thereafter made; * * admits that on February 9, 1912, the defendant made a written tender, a copy of which is annexed to said answer, and marked 'Exhibit B,' and admits that on April 6, 1912, the defendant made a written tender, a copy of which is annexed to said answer, marked 'Exhibit C'; * * alleges that all defects in the title of plaintiff to said lands to which the defendant had in any manner made objections prior to the commencement of this suit were,

prior to said time, fully cured and corrected, and an abstract thereof, showing a marketable title thereto in the plaintiff in conformity with the requirements of said contract, had been furnished the defendant, and received and retained by him, and alleges that by his said conduct and his said failure to theretofore mention or raise said objections the defendant is, and ought to be, estopped to now raise or set up any of the alleged objections to said title, or to said abstract set forth in his answer herein.''

All other allegations of the answer were denied. There was a demurrer to the reply for insufficiency, which was overruled. It is argued here that the question of a departure of the reply from the complaint was not raised on the argument of the demurrer, but was first urged upon the trial when evidence was introduced by plaintiff tending to show that the plaintiff, within the time specified, furnished to defendant an abstract to which defendant's attorney suggested the following objections, which defendant communicated to plaintiff and requested that they be obviated:

''Marshfield, Oregon, September 22, 1911.
''Mr. Herbert Lockhart, Marshfield, Oregon.
''Dear Sir: I have examined an abstract of title to 'that part of lot 1, and the northwest quarter of the southeast quarter of section 11, in township 26 south, of range 13 west of the Willamette meridian, platted as the town of Port Barnum January 16th, 1907, by Guy C. Barnum,' prepared by Title Guaranty & Trust Co., of Marshfield, Oregon, comprising 52 pages, which said abstract is numbered 1760, and the certificate to which bears date August 28, 1911, and I have to report that aside from the particulars hereinafter noted, title to said real property is vested in the said Guy C. Barnum. (1) At page 14 of said abstract, one A. J. Davis, with others, is named as a grantee of a portion of the lands involved. Subsequently, and on page 27, J. A. Davis joins with others in a conveyance of a por-

tion of said lands.     Subsequently still, and at page 401,
A. J. Davis is a party grantor of the lands involved.
I suggest that affidavits be furnished showing A. J.
Davis and J. A. Davis to have been one and the same
person, unless it may be made to appear that there is
error on the part of the abstracter.     (2) In a convey-
ance noted on page 27, wherein the (assumed) heirs of
one Malinda Davis, deceased, convey an interest in the
lands involved to one W. R. Davis, the description is
not complete in that a closing call is not given; i. e., a
call which would read, 'thence west to the place of be-
ginning.'     I have examined the authorities on this
point and find that the law will presume a closing of
the lines, and mention is here made of the point only to
show that it was considered.     (3) The foregoing con-
veyance purports to have been made by a number of
persons as 'heirs at law of Malinda Davis, deceased.'
No administration of the estate of the said Malinda
Davis was had, and hence there is no decree of distri-
bution or other judicial showing as to who may be such
heirs.     It will therefore be necessary to establish, by
same means, the relation these persons bore to the de-
ceased, and that if they are heirs, that they are *all* of
the heirs of the deceased.     As I am given to under-
stand that the Davis family is an old one in this com-
munity, I take it that full affidavits covering the sub-
ject matter would be sufficient.     (4) Beginning at page
29, and concluding on page 34, probate proceedings are
set out in the matter of the estate of A. C. Hougard,
deceased.     At the time of his death, the deceased was
record owner of an undivided one-fourth interest in
the lands involved.     He left a will wherein his named
executrix was given power and authority to dispose of
said interest without the order or intervention of any
court.     The will was probated, the executrix qualified,
an inventory was filed and some proceedings were had
as to a disputed claim.     Notice to creditors was not
given, nor was the estate ever closed.     However, under
the terms of the will, this would be immaterial, except
as to outstanding claims—against which the statute of

limitations will not have run, *unless they shall have been presented to the executrix.* Evidently intended as corrective of this condition, is a deed noted on page 35, whereby the widow (executrix) and heirs convey the estate, but it remains a question of fact whether the parties grantor therein are all of the heirs of the deceased. I suggest that affidavits be secured clearly showing the grantors to be all of such heirs, and that no claims were filed with the executrix. (5) At page 50 reference is made to a vacation of the town site of Port Barnum, which *would appear to be sufficient, if no lots or blocks therein had been conveyed,* or concerning which recorded contracts of sale had been entered into, prior to such vacation. I suggest that you satisfy yourself on this point, since if lots or blocks had been sold, jurisdiction of the County Court to vacate must more clearly appear. (6) An unsatisfied mortgage in favor of the First Trust and Savings Bank of Coos Bay, for the sum of $2,000, bearing date, April 4, 1910, which became due April 4, 1911, with interest at the rate of 10 per cent per annum, payable quarterly in advance. (7) An unsatisfied mortgage in favor of Henry Sengstacken, for the sum of $8,750, bearing date, May 14, 1910, due three years from said date, with interest at the rate of 6 per cent per annum, payable annually. (8) Taxes for the years 1909 and 1910. There are other defects appearing, but as they do not substantially affect the title, I have made no note of them.                Respectfully submitted.

"J. M. UPTON."

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Tom T. Bennett, Mr. J. W. Bennett* and *Mr. Bennett Swanton,* with an oral argument by *Mr. Tom T. Bennett.*

For respondent there was a brief and an oral argument by *Mr. John D. Goss.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. All the objections appearing in the foregoing statement seem to have been obviated and the mortgages mentioned in the opinion of the attorney who examined the abstract satisfied or released, so that but two objections among those then considered and advanced by defendant are now urged here; the first being the defect in the deed from the heirs of Malinda Davis to W. R. Davis in which the closing call was not given, and the second being that a release given by Henry Sengstacken to the $8,750 mortgage mentioned by the attorney in his opinion did not name any consideration. A third objection, which was not raised then or afterward, until this action was commenced, was the existence of the railroad right of way upon the premises. The conveyance from the heirs of Malinda Davis to W. R. Davis is not in law ambiguous. The description begins at a section corner and runs north 20 chains; thence east 20 chains to low-water line of Isthmus Slough; thence in a southerly direction along low-water line to a point due east of the place of beginning; and is said to contain 61 acres. The closing call is omitted, but where the tract is rectangular and three sides and the number of acres are given, the fourth side is to be found by running a straight line from the last call to the place of beginning: *Commonwealth* v. *City of Roxbury*, 9 Gray (Mass.), 490; *Ray* v. *Pease*, 95 Ga. 153 (22 S. E. 190). A reference to the opinion of Mr. Upton, defendant's attorney, indicates that he was of this opinion, and it cannot be said that defendant urged this as an objection.

2. The objection that Sengstacken's release does not show a consideration is untenable. The release is under seal, and this of itself is primary evidence of a

consideration. Section 7140, L. O. L., provides that
the owner or holder of record may satisfy or release a
mortgage. Sengstacken was the owner and holder of
record. Section 7138, L. O. L., provides what the cer-
tificate of release shall contain, namely, that it shall
specify "that such mortgage has been paid or other-
wise satisfied or discharged." This the release made
by Sengstacken contains. It would thus appear that
the release complies strictly with every statutory re-
quirement, which is sufficient.

3, 4. The third objection goes to the existence of the
railway line across the tract. There has been much
discussion as to whether the defendant has waived his
objection to this encumbrance by failing to make timely
objection, and whether, if so, his waiver is seasonably
pleaded. In our judgment neither of these questions
arise in this case, and an easement of this character
cannot be said to be within the legal contemplation of
the contract. A leading author states the law as
follows:

"As a general rule, the existence of an open, notori-
ous, and visible physical encumbrance upon the estate,
such as a public highway, forms no objection to the
title, because it is presumed that the purchaser was
to take subject to such encumbrance. Neither does
such encumbrance entitle the purchaser to compen-
sation, nor to an abatement of the purchase money,
nor to a conveyance with a covenant against the en-
cumbrance, because it is presumed that in fixing the
purchase price the existence of the encumbrance was
taken into consideration": Maupin on Marketable Title
(2 ed.), 197; *Ashburn* v. *Sewell,* L. R. 3 Ch. Div.
(1891) 105; *Desvergers* v. *Willis,* 56 Ga. 515 (21 Am.
Rep. 289); *Tise* v. *Whittaker-Harvey Co.,* 144 N. C.
507 (57 S. E. 210); *Trice* v. *Kayton,* 84 Va. 217 (4 S.
E. 377, 10 Am. St. Rep. 836); *Jordan v. Eve,* 72 Va.
(31 Gratt.) 1; *Hymes* v. *Estey,* 116 N. Y. 501, (22 N.
E. 1087, 15 Am. St. Rep. 421).

Nothing can be more public than a railway over a tract of land, and it is inconceivable that defendant could have contemplated that plaintiff would remove it before tendering an abstract, and equally inconceivable that he was ignorant of its existence. Without reference to authority it seems reasonable that where the existence of so palpable a physical easement as a railroad is urged as an objection to the title, the burden of pleading and proof should be upon the purchaser to show that he was in fact ignorant of its existence. The evidence in this case tends to show that the existence of this railway line across the property constituted a great part of its value, and was probably the moving cause which induced defendant to enter into the contract. Defendant's position in the controversy is inconsistent. He does not seek to rescind the contract, but on the contrary affirms it. He claims that he is ready and willing to perform his part of it upon plaintiff's furnishing him an abstract showing marketable title, and at the same time presents a defense which, if valid, would render it morally impossible for such an abstract to be furnished. Upon defendant's theory as to the abstract he had the right: (a) To rescind the contract and demand a return of the money paid; (b) to counterclaim for damages to the extent that the railway over the premises depreciated the value of the land; or (c) by a cross-bill in equity to compel specific performance as to that portion of the land unaffected by the railway easement, and an abatement in the price to be paid equal to the loss suffered by reason of plaintiff's inability to comply wholly with the contract; but he has not chosen to avail himself of any of these remedies. A verdict in his favor under the pleadings here would leave the contention "in the air" indefinitely. The contention

of defendant is that plaintiff's action has been prematurely brought, and that it should not be held to accrue until an abstract obviating defendant's objections has been furnished. This is a matter in abatement and should have been pleaded as such: *McClung v. McPherson,* 47 Or. 73 (81 Pac. 507, 82 Pac. 13); *Fiore* v. *Ladd,* 29 Or. 528 (46 Pac. 144). But even treating the answer as a plea in abatement, we hold that the abstract furnished showed a marketable title within the fair legal intent of the contract.

The judgment is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.