EGETER et al,
*Respondents,*

*v.*

WEST AND NORTH PROPERTIES et al,
*Appellants.*

(83-134CV-1; CA A43344)

758 P2d 361

Gerald A. Martin, Bend, argued the cause for appellants. With him on the briefs was Francis & Martin, Bend.

Claud Ingram, Eugene, argued the cause for respondents. With him on the brief was Bick & Monte, P.C., Eugene.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant West and North Properties (West) appeals from a judgment declaring that defendants Cliff have an easement over the parcel of property which plaintiffs purchased from West and also rescinding plaintiffs' land sale contract for that parcel. The issues are whether the easement constitutes an encumbrance sufficient to allow rescission and whether plaintiffs delayed too long in seeking to rescind. On *de novo* review, ORS 19.125(3), we affirm.

West's real estate agent showed plaintiffs the subject property in February, 1981. The agent drove them to the property on the road which gave rise to this claim. At that time, there were at least six inches of snow on the ground. The road showed little use, and trees and brush had to be moved to drive on it. The real estate agent represented that the "old stagecoach road" ran alongside, not on the property, but did provide legal access to it.

On May 8, 1981, plaintiffs and West entered into an earnest money agreement for the property. Plaintiffs were on the property again in the spring of 1981 and reached it by the same road that they had used before. They observed that the road ran across the entire parcel and that there were gates at each end. They also observed cattle droppings on the property. On September 10, 1981, the parties executed a land sale contract.

In the spring of 1982, plaintiffs were back on the property and saw cattle grazing there. They wrote a letter to Cameron Cliff, explaining that they had placed locks on the gates and sending him a key. On June 14, plaintiffs received a letter from Cameron advising them that he had an easement across the property and that he did not want the gates locked. Plaintiffs could not reach him, because he was out of town for the summer.

Plaintiffs consulted an attorney, who wrote to West regarding the claimed easement. West's attorney responded that the Cliffs did not have an easement and suggested that plaintiffs resolve the matter by litigation with the Cliffs. Plaintiffs went to the property after Labor Day. They testified that, at that time, the road was not well defined and that there

were trees down over it. There was no evidence of maintenance.

In December, plaintiffs decided that the existence of the road easement was unacceptable to them; it runs through the area in which they planned to build a house. They ceased making payments that month and sought a declaratory judgment in January, 1983. During Cameron Cliff's deposition, plaintiffs were told that the road is a public road and is the old stagecoach road. It does not appear in the Klamath County records, but West found a map at the Oregon Historical Society showing the location of the road on the property. The trial court granted plaintiffs rescission and awarded the Cliffs an easement over the road.[1]

West contends that the road does not constitute an

---

[1] The trial court did not make any findings of fact regarding the road and whether it was the old stagecoach road (a public road) or a private road over which the Cliffs could have an easement. Defendants Cliff moved for summary judgment, contending that they had an easement. The trial court ruled that there was a question of fact regarding the status of the road as public or private and denied the motion. Following a telephone conference, the court issued the following order:

"At the time of the conference [call], Mr. Johnson [Cliffs' attorney] pointed out that the Court, in ruling on the motion for summary judgment submitted on behalf of the Estate of Cameron Cliff, deceased, and Ruth Cliff, determined that the issue of fact which remained was whether the road in question is a public way or a private easement. He stated that his clients had no further interest in the case if in fact the only issue regarding the road was its status either as a public way or a private easement and that they were solely concerned with their ability to travel over it across the land in question and to transport their cattle across it. Mr. Martin [West's attorney] pointed out that their pleadings had admitted the existence of the road either as a public way or a private easement, depending on proof at trial. Mr. Ingram [Egeters' attorney] stated he had no objection to the status of the road being limited to that issue. Plaintiffs had filed no response to Defendants Cliffs' motion for summary judgment.

"NOW THEREFORE, IT IS HEREBY ORDERED that for purposes of trial, the existence of the road is established but its status as a public way or an easement existing in favor of the Estate of Cameron Cliff and Ruth Cliff remains in issue."

The amended judgment provides, in relevant part:

"3. The estate of Cameron Cliff and Ruth Cliff, pursuant to an Order entered herein, have an easement over the subject property in the location of the existing road."

The status of the road as public or private does not affect the outcome of the dispute between plaintiffs and West. Whether the road is public or private, it constitutes a material breach of contract. We do not decide whether the trial court was correct in awarding the Cliffs an easement.

encumbrance, because it was open and notorious and therefore known to plaintiffs. It argues that the road is a continuation of the road which provided access to the property and that it extends through the property with a gate at each end. Plaintiffs argue that the road was covered with snow the first time that they saw it, that it is nothing more than a dirt trail which had not been maintained and that it could only be used by removing brush from it.

At common law, open and notorious conditions are not encumbrances, even though they are not excepted from the warranty of title, because they are visible for all to see. A purchaser has the obligation to inspect the property and to be aware of such conditions. Purchasers are deemed to have purchased the property with the knowledge of the existence of any easements which reasonably could have been discovered. *Ford v. White,* 179 Or 490, 495-96, 172 P2d 822 (1946); *Barnum v. Lockhart,* 75 Or 528, 540, 146 P 975 (1915). It is not clear whether that rule applies to a statutory warranty deed. In *Leach v. Gunnarson,* 290 Or 31, 40-42, 619 P2d 263 (1980), the court recognized that, although the purpose of the rule is to put the onus on the buyer, not all conditions are obvious enough. 290 Or at 42. Although the present case does involve a public road, the road has not been maintained and is not shown in the county records. In reaching the parcel, West's agent drove plaintiffs across several parcels and at one point located a hidden key to open a gate. West's agent represented to plaintiffs that they had the right to lock out the public. In addition, once plaintiffs had informed West of the Cliffs' claim, West denied that it was valid. We agree with the trial court that the easement is not so open and notorious that plaintiffs should be charged with knowledge of its existence.

West next argues that, considering the use which has been made of the roadway, it does not constitute a material defect in the title and that, therefore, plaintiffs are not entitled to rescission. It points out that Cameron Cliff's deposition establishes that his only use of the road is to drive cattle in the spring and again in the fall and that he makes an occasional trip in the summer to check on the cattle. Further, he did not object to having the gates closed, only to having them locked. West also argues that, although plaintiffs claim that the easement would interfere with their planned building site, the actual recorded road easement runs through a portion

of the building site and presumably would have caused more interference.

■■ Plaintiffs argue that the existence of the Cliffs' easement is a material defect in the title. An encumbrance is

> "any right to or interest in the land, subsisting in a third person, to the diminution of the value of the land, though consistent with the passing of the fee by conveyance." *Ford v. White, supra,* 179 Or at 494.

The existence of an unrecorded easement that is not open and notorious is an encumbrance and does constitute a material breach of contract. *Leach v. Gunnarson, supra,* 290 Or at 42; *Marshall v. Wattles,* 67 Or App 442, 448, 678 P2d 762 (1984). Use of the easement, although not frequent, would certainly interfere with the construction and use of a residence. That is sufficient reason to allow rescission.

West contends that plaintiffs waited too long to rescind the contract. It argues that, before June, 1982, plaintiffs became aware that Cliff was using the road across that property, that nothing changed between June and December of that year and that plaintiffs waited until December to stop making payments and until January to initiate this action. Plaintiffs argue that they acted with reasonable diligence in electing to rescind, that it was West's categorical denial of the existence of the easement that created the delay and that the delay, if any, was not sufficient to deny their right to rescind.

■ A person seeking to rescind a contract must do so promptly after obtaining knowledge of the facts constituting the grounds for rescission. *Engleking v. Field,* 268 Or 537, 542, 522 P2d 493 (1974); *Miller v. Barker,* 233 Or 113, 123, 377 P2d 343 (1962); *Porras v. Bass,* 63 Or App 832, 836, 665 P2d 1249, *rev den* 295 Or 840 (1983). However, delay alone can not constitute a waiver of the right to rescind. *McDonald v. Shore,* 285 Or 151, 157, 590 P2d 218 (1979). A buyer is not required to act immediately to rescind, so long as he acts within a reasonable time. *Brown et ux v. Hassenstab et ux,* 212 Or 246, 256-57, 319 P2d 929 (1957). Further, courts have recognized that there may be a sufficient explanation for the delay, even if it seems long. *See Bodenhamer v. Patterson,* 278 Or 367, 375-76, 563 P2d 1212 (1977); *Hampton v. Sabin,* 49 Or App 1041, 621 P2d 1202 (1980). We agree with the trial court that, under the circumstances, plaintiffs did not delay so long as to waive their

right to rescind. The trial court did not err in rescinding the contract.

Affirmed.